## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ADRIAN COSS, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>Defendant. | Case No. 1:21-cv-00764<br><br>(related to 1:21-cv-00748 pending before the Honorable Rebecca R. Pallmeyer)<br><br>JURY TRIAL DEMANDED |

### CLASS ACTION COMPLAINT

NOW comes Plaintiff ADRIAN COSS, individually and on behalf of a class of similarly situated individuals, by and through his undersigned attorneys, and complaining as to the conduct of Defendant MIDLAND CREDIT MANAGEMENT, INC., asserts the following claims:

### I. Jurisdiction, Parties and Venue

1. This civil action arises under and is brought pursuant to the FDCPA and subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

2. Plaintiff ADRIAN COSS ("Plaintiff") is a consumer who is a citizen of the State of Illinois and lives in this Judicial District.

3. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.*

4. Defendant MIDLAND CREDIT MANAGEMENT, INC. ("Defendant" or "Midland") is incorporated in the State of Kansas and maintains its principal place of business at 3111 Camino Del Rio North, Suite 1300, San Diego, California 92108.

5. Venue is proper pursuant to 28 U.S.C. §1391 as Defendant conducts substantial debt collection business in this judicial district and the subject collection

1

letters and envelopes used to mail the collection letters were sent to Plaintiffs' residential address which is located within this judicial district.

## II. Background Facts Related to Defendant's Conduct

6. This Civil Action arises out of Defendant's attempts to collect from Plaintiff a purported consumer debt that was allegedly incurred by Plaintiff in relation to Menards branded credit card issued by Capital One, N.A. as well as Walmart Rewards branded credit card issued by Capital One, N.A. (at times the "Subject Debt" or "Capital One Debt").

7. The Subject Debt was incurred for personal, family and household purposes as the term "debt" is defined by Section 1692a(5) of the FDCPA. Plaintiff made payments towards paying off the Subject Debt but lost his job.

8. Defendant is a "debt collector" as defined Section 1692a(6) of the FDCPA, because it regularly uses the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

9. Defendant's website describes itself as follows:

> Midland Credit Management (MCM) connects with consumers every day to help resolve past-due debts. We specialize in servicing accounts that have fallen behind and have been charged off by the lender. When lenders close these accounts, they often sell them to companies like MCM.
>
> If you've heard from us, your lender has probably charged off one of your accounts and sold it to us. MCM enjoys longstanding relationships with major financial institutions and retailers across the country.

https://www.midlandcredit.com/who-is-mcm/

10. Defendant "is a subsidiary of Encore Capital Group, which is a public company traded on the NASDAQ stock exchange as ECPG."

11.     On information and belief, pursuant to Defendant's customary business practice, a related entity, Midland Credit Funding, LLC ("Midland Funding"), purchased the Subject Debt from Capital One, N.A.

12.     Midland Funding is a debt buyer and is one of the largest debt buyers in the United States.

13.     According to a website operated by Defendant:

> Midland Funding, LLC is one of the nation's largest owners of unpaid debts. Midland Funding owns accounts that have been charged off by the original lender.
>
> Charge offs happen after a lender doesn't receive payments for a period of time or payments are less than the minimum amount due. Lenders then close these accounts and sell them to companies like Midland Funding or MCM.

https://www.midlandcredit.com/who-is-mcm/midland-funding-llc/

14.     Defendant explains its relationship with Midland Funding as follows:

> Midland Credit Management services accounts owned by Midland Funding and accounts owned by MCM.

https://www.midlandcredit.com/who-is-mcm/midland-funding-llc/

15.     On November 2, 2020, Encore Capital, Defendant's parent company, reported the following "Third Quarter 2020 Financial Results":

- GAAP net income up 41% to $55 million, or $1.72 per share
- Non-GAAP adjusted net income up 42% to $74 million, or $2.31 per share
- Global collections grew 8% to a record $540 million
- Estimated Remaining Collections (ERC) grew 15% to a record $8.5 billion

See, press release entitled "Encore Capital Group Announces Third Quarter 2020 Financial Results", found at https://encorecapital.gcs-web.com/static-files/8367294e-1d58-42bc-a1a8-dbd3b77b982a (last viewed on 2/10/21).

16.     Defendant routinely collects consumer debts owned by Midland Funding.

17. Defendant also purchases defaulted consumer debts from original creditors and from other debt buyers.

18. Defendant acted as debt collector in attempting to collect Subject Debt.

19. Defendant *claims* that it is the current owner of Subject Debt.

20. Plaintiff is a "consumer" as defined by § 1692a(3) of the FDCPA.

21. Defendant's efforts to adhere to certain requirements of the FDCPA plausibly suggest that Defendant regarded each of the Subject Debts to be a "debt" as this term is defined by Section 1692a(5) of the FDCPA.

### III.    Summary of the FDCPA

22. Section 1692of the FDCPA contains "Congressional findings" and a "declaration of purpose" and states as follows:

**(a) Abusive practices**

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

**(b) Inadequacy of laws**

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

**(c) Available non-abusive collection methods**

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

**(d) Interstate commerce**

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

**(e) Purposes**

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively

4

disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

*See,* 15 U.S.C. § 1692.

23.     One purpose of the FDCPA was to address "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

24.     In enacting the FDCPA, Congress determined that "[a]busive debt collection practices contribute to" societal harms, include increasing "the number of personal bankruptcies," "marital instability," "the loss of jobs," and "invasions of individual privacy." 15 U.S.C. § 1692(a).

25.     Congress determined that "[e]xisting laws … are inadequate to protect consumers" and that "[m]eans other misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. §§ 1692(b)-(c).

26.     The FDCPA provides that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c).

27.     The FDCPA protects *ethical collectors* from being competitively disadvantaged. 15 U.S.C. § 1692(e).

28.     As described below, Defendant has violated the prohibitions of Sections 1692e and 1692f(8) of the FDCPA to gain a competitive advantage over other debt collectors that attempt to collect charged-off consumer credit card debts that have been sold by the original creditor.

### IV.     Additional Background Facts Supporting Each Cause of Action

29.     Section 1692f(8) of the FDCPA which prohibits a debt collector from:

Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

30.    On January 21, 2020, the Seventh Circuit in *Preston v. Midland Credit Mgmt.*, 948 F.3d 772 (7th Cir. 2020) held that MCM violated 1692f(8) of the FDCPA by placing the phrase "**TIME SENSITIVE DOCUMENT**" on an envelope used to transmit a collection letter.  According to the court:

> On Midland's motion, the district court dismissed the complaint. The district court noted that the plain language of § 1692f(8) prohibited any writing on the envelope, but nevertheless concluded that there was a benign-language exception to the statutory language.
>
> * * *
>
> We conclude that the language of § 1692f(8) is clear, and its application does not lead to absurd results. To the contrary, the prohibition of any writing on an envelope containing a debt collection letter represents a rational policy choice by Congress. Consequently, we conclude that the district court erred in dismissing Mr. Preston's claim under § 1692f(8).
>
> * * *
>
> On its face, the prohibition is clear: use of *any* language or symbol on an envelope, except for the debt collector's name (if it does not indicate that the collector is in the business of debt collection) and the debt collector's address, violates subsection (8).
>
> * * *
>
> The statutory language does, in fact, prohibit debt collectors from sending communications to consumers in envelopes bearing symbols that are indicative of debt collection. The language of the statute simply draws a clear line to ensure that consumers' rights are not lost in the interpretation of more subtle language.
>
> * * *
>
> Turning to the facts here, there is no question that the language "TIME SENSITIVE DOCUMENT" appears on the envelope enclosing a communication to a consumer. It is equally apparent that the language at issue does not fall within the itemized exception set forth in subsection (8): It is not Midland's name nor its address. The inclusion of this phrase thus violates § 1692f(8), and the district court erred in dismissing the claim set forth in Count I of Mr. Preston's complaint.

*Preston*, 948 F.3d 776-77, 781, 783-84 (emphasis in original).

31.    In order to gain a competitive advantage over other debt collectors, and in defiance of the prohibitions set forth by Section 1692f(8) of the FDCPA, Defendant sends collection letters to consumers in this judicial district inside of envelopes marked with

the words "**TIME SENSITIVE DOCUMENT**" or "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED".

32.     The competitive advantage that Defendant gains by using envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" is that Defendant knows that consumers are more likely to open the envelopes marked with these words than envelopes that do not contain these words.

33.     Defendant knows that by enclosing collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "IMPORTANT DOCUMENT ENCLOSED, ATTENTION REQUESTED", consumers are more likely read the enclosed letter and pay the subject debt – than if the letter was sent in a plain envelope.

34.     Defendant knows that by enclosing collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED", consumers are more likely read the enclosed letter and call or otherwise interact with Defendant regarding the subject debt.

35.     This form of interaction leads to confirmation that the consumer can be reached via mail or phone, and this leads to additional communications and pressure tactics to cause the responding consumer to pay the subject debts.

36.     Defendant has determined that it collects more money from consumers when it sends letters enclosed within envelopes marked with the words, "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED", notwithstanding the fact that Section 1692f(8) of the FDCPA prohibits this type of wording.

37.     Defendant's use of the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" on envelopes to mail

collection letters to consumers was undertaken to gain a competitive advantage over debt collectors.

38.     Defendant's use of the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" on envelopes to mail collection letters to consumers violated Section 1692f(8) of the FDCPA.

39.     As explained by Defendant's counsel during oral argument in the case of *Preston v. Midland Credit Mgmt.*, 948 F.3d 772 (7th Cir. 2020), Defendant's use of the words "**TIME SENSITIVE DOCUMENT**" on envelopes to mail collection letters to consumers was done *with the express purpose of drawing consumers' attention of the contents of the envelopes.*[1]

40.     The same attorney that represented Midland during oral arguments in *Preston v. Midland Credit Mgmt.* was featured on a television program entitled "Debt Buyers: Last Week Tonight With John Oliver". The "Debt Buyers" episode is hosted at https://www.youtube.com/watch?v=hxUAntt1z2c

41.     The episode has over 16,000,000 views.

42.     The Honorable Judge David F. Hamilton referred to the "Debt Buyers" episode during oral argument in *Steffek v. Client Services, Inc.*, 948 F.3d 761 (7th Cir. 2020).[2]

43.     As depicted in the episode of "Debt Buyers" and the below screen captures of the episode, Midland's defense conveyed a different message to attorneys and debt buyers attending a buying conference where he rhetorically asked the audience members, "Who's going to read and understand these words on this letter?":

_____

[1] See, http://media.ca7.uscourts.gov/sound/2019/dl.18-3119.18-3119_05_29_2019.mp3

[2] http://media.ca7.uscourts.gov/sound/2019/gw.19-1491.19-1491_12_11_2019.mp3 (at 10:40 min. mark).



44.     Midland's attorney answered his own question by stating "[t]he unsophisticated consumer?":



45.     Midland's counsel offered his opinion as to the level of sophistication of the consumers that Midland targets, where asked whether debt collectors using legislative or court-mandated disclosures regarding time-barred debts did not negatively impact collection efficiencies:

9









46.     Midland's counsel then said "nobody wants to raise their hand" and went

on to answer his question by saying he did not believe that the legislative or court

mandated disclosures regarding time-barred debts impacted collection efficiencies:





47.     Thereafter, Defendant's counsel (referring to his own experience in defending FDCPA cases) said: "I depose these plaintiff in these lawsuits, and they don't even read the letter":



48.     Mr. Oliver was less than pleased with the above attorney's comments, resulting in Mr. Oliver swearing after watching the above comments.

49.     Ashish Masih, Encore Capital Group's President and Chief Executive Offer Midland's has publically referred to recently enacted rules published by the Consumer Financial Protection Bureau ("CFPB") that govern debt collection practices. According to Encore Capital Group's website:

> "The CFPB's new industry rules, released last week as expected, provide much needed clarity and create uniformity in the fair treatment of U.S. consumers in debt collection. The new rules are largely consistent with those proposed eighteen months ago and, as a result, we are well prepared to fully implement them with no significant incremental operational changes. Through these new rules, we remain very much aligned with the CFPB's goal of making consumer financial markets work for consumers, responsible providers, and the economy as a whole," added Masih.

See, press release entitled "Encore Capital Group Announces Third Quarter 2020 Financial Results", found at https://encorecapital.gcs-web.com/static-files/8367294e-1d58-42bc-a1a8-dbd3b77b982a (last viewed on 2/10/21).

50.     As recently as September 8, 2020, the Consumer Financial Protection Bureau ("CFPB") sued Defendant and Midland Funding in the Southern District of

California for violating the FDCPA. See, Complaint, ECF #1 in 3:20-cv-01750-GPC-KSC.[3]

51.  According to the CFPB's press release:

> The Bureau's complaint, filed in federal district court in the Southern District of California, specifically alleges that since September 2015, Encore and its subsidiaries violated the consent order by suing consumers without possessing required documentation, using law firms and an internal legal department to engage in collection efforts without providing required disclosures, and failing to provide consumers with required loan documentation after consumers requested it. The Bureau also alleges that the companies violated the consent order, the CFPA, and the FDCPA by suing consumers to collect debts even though the statutes of limitations had run on those debts and violated the consent order by attempting to collect on debts for which the statutes of limitations had run without providing required disclosures. The Bureau further alleges that the companies violated the CFPA by failing to disclose possible international-transaction fees to consumers, thereby effectively denying consumers an opportunity to make informed choices of their preferred payment methods. The Bureau also alleges that each violation of the consent order constitutes a violation of the CFPA.

52.  https://www.consumerfinance.gov/about-us/newsroom/cfpb-sues-debt-collectors-and-debt-buyers-encore-capital-group-et-al/

**V.  Defendant's Collection Activities**

53.  Within the past year, Defendant sent Plaintiff numerous collection letters in an attempt to collect the Subject Debt.

54.  At least one of the envelopes that Defendant used to send the subject collection letters were mailed to Plaintiff inside of envelopes that contained the words "**TIME SENSITIVE DOCUMENT**" on its exterior in bold font.

55.  At least one of the envelopes that Defendant used to send collection letters to Plaintiff were mailed to Plaintiff inside of envelopes that contained the words

---

[3] The Complaint can be found at https://files.consumerfinance.gov/f/documents/cfpb_encore-capital-group-et-al_complaint_2020-08.pdf

"IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" on its exterior in embossed (raised) lettering.

56.     When Plaintiff observed the words **"TIME SENSITIVE DOCUMENT"** and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED", his attention was immediately drawn to these words.

57.     Defendant's unlawful use of the words **"TIME SENSITIVE DOCUMENT"** and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" on its envelopes created a false sense of urgency for Plaintiff who was struggling to pay down his debts after encountering financial difficulties beyond his control.

58.     Defendant used the words **"TIME SENSITIVE DOCUMENT"** and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED", as opposed to using plain envelopes, because Defendant knew that consumers like Plaintiff would be drawn to these words, and thus more likely to open the envelopes and contact Defendant about the contents of the enclosed letters.

59.     As a result of the "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" disclosure on the face of the subject envelopes, Plaintiff immediately opened the collection letter to determine why Defendant designated the enclosed collection letter as being and "IMPORTANT DOCUMENT" which was marked with the words "ATTENTION REQUESTED".

60.     The above response was consistent with Defendant's intentions.

61.     After Plaintiff opened the so-called **"TIME SENSITIVE DOCUMENT"** envelope, he was frustrated and distressed to after learning there was no content that was obviously or clearly **"time sensitive"** relative to the contents of the collection letter contained within the envelope.

62. After Plaintiff opened the so-called "IMPORTANT DOCUMENT ENCLOSED" envelope, he was frustrated and distressed to after learning there was no content that was obviously or clearly "IMPORTANT" relative to the contents of the collection letter contained within the envelope.

63. Reading the words "**TIME SENSITIVE DOCUMENT**" caused Plaintiff to worry about the contents of the enclosed letter, as he was concerned about the so-called "**TIME SENSITIVE**" nature of the enclosed collection letter. Plaintiff's response was consistent with Defendant's intentions.

64. Plaintiff immediately grew nervous and anxious to learn the contents of the letter that was contained within the so-called time "**TIME SENSITIVE**" nature of the enclosed collection letter. This response was consistent with Defendant's intentions.

65. As a result of the "**TIME SENSITIVE DOCUMENT**" disclosure on the face of the subject envelopes, Plaintiff immediately opened the collection letter to determine why Defendant designated the enclosed collection letter as being "**TIME SENSITIVE**". This response was consistent with Defendant's intentions.

66. Reading the words "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" caused Plaintiff to worry about the contents of the enclosed collection letter, as he was concerned to learn why the "IMPORTANT" nature of the enclosed collection letter and why Defendant wrote "ATTENTION REQUESTED" on the face of the envelope.

67. As a result of receiving the above unlawful communications from Defendant, Plaintiff retained and paid the undersigned counsel to bring legal action against Defendant.

68. To embarrass Plaintiff and cause him to pay the Subject Debt, Defendant used the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT

ENCLOSED ATTENTION REQUESTED" on envelopes because it knew that third-parties would recognize Defendant's return and understand that the enclosed letters related to discharged debts.

69. Further, Defendant's unlawful use of the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" on its envelopes caused third-parties to realize that Plaintiff owed money to a debt collector where the Subject Debt –based upon the specific words chosen by Defendant informed third-parties that Plaintiff owed a debt that was "**TIME SENSITIVE**" in nature or where an "IMPORTANT DOCUMENT [WAS] ENCLOSED" and/or that the enclosed collection letter required Plaintiff's "ATTENTION".

70. None of the collection letters that Defendant mailed to Plaintiff truly contained any "time sensitive document" because it was Defendant's practice to continually offer similar discounted payment options.

71. The fact that Defendant would repeatedly renew discounted payment options was not known to Plaintiff when he first read letters that were mailed to him inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**".

72. The fact that Defendant would repeatedly renew discounted payment options was not known to Plaintiff when he first read letters that were mailed to him inside of envelopes marked with the words "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED".

73. None of the enclosed collection letters contained an "important document" because it was Defendant's practice to continually offer similar discounted payment options.

74. Plaintiff's reactions to the envelopes and letters were consistent with Defendant's intentions.

16

75. As a result of Defendant's purposeful and knowing conduct, Plaintiff suffered concrete harm as a result of Defendant's actions, in the form of confusion, aggravation, embarrassment and emotional distress.

76. Plaintiff was further subjected to deceptive and misleading conduct by Defendant which materially impacted and shaped his reaction and course of conduct in response to Defendant's collection efforts.

77. For example, in an attempt to pay down the Subject Debt as a result of Defendant using the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED", on more than one occasion, Plaintiff attempted to collect funds necessary to pay down the Subject Debt – at the expense of not paying down a debt that was in fact more words "**TIME SENSITIVE**" and/or "IMPORTANT" than the Subject Debt.

78. Defendant's conduct also posed a material risk of harm to the interests protected by the FDCPA, including Plaintiff's interest in receiving truthful and accurate information regarding Defendant's collection efforts,

79. Defendant's conduct also violated one of the FDCPA's identified interests in ensuring that otherwise compliant debt collectors are not disadvantaged in the marketplace through unlawful conduct.

80. Persons unrelated to Plaintiff observed that Plaintiff had been mailed collections letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" and these improper disclosures violated Plaintiff's privacy and caused Plaintiff to suffer from embarrassment.

81. Defendant's actions only served to stress out and embarrass Plaintiff and force him to open the subject envelopes for the purpose of increasing the likelihood with which Defendant would be able to obtain money from Plaintiff.

82. Prior and subsequent collection letters merely offered the same discounted payment offers despite the fact that Defendant likely bought the Subject Debt for less than 10% of the amount owed.

83. Defendant's widespread practice of sending form collection letters and form envelopes to Plaintiff satisfy the elements numerosity, commonality and typicality as more than forty consumers living in the confines of this judicial district were sent form collection letters where the collection letters repeated the same discounted payment offers and the letters were sent inside of form envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and/or "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED". See FRCP 23(a)(1)-(3).

84. The claims of Plaintiff are typical of the claims of the absent class members who originally owed debts to Capital One, N.A., and in particular, with regard to Menards and Walmart Rewards branded credit cards.

85. Plaintiff and his counsel will fairly and adequately protect the interest of the proposed class members. Counsel for Plaintiff was lead counsel in *Preston v. Midland Credit Mgmt.*, 948 F.3d 772 (7th Cir. 2020) where the Seventh Circuit Court of Appeals held that Defendant violated Section 1692f(8) of the when it mailed collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**".

86. Questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy where Rule 23(b will assist class members in obtaining relief. *See, e.g., Pierre v. Midland Credit Mgmt.*,

2017 U.S. Dist. LEXIS 61107, *29 (N.D. Ill. April 21, 2017) ("[A]llowing the action to proceed on a class wide basis aligns with both the purpose of class actions (incentivizing aggregation of claims where little incentive to sue individually would otherwise exist) and the purpose of the FDCPA (protecting consumers from abusive debt collection practices)."

87. At the present time, the proposed classwide relief is intended to encompass (**a**) individuals with mailing addresses located within the confines of the Seventh Circuit who, within one year of the filing of this First Amended Complaint were mailed collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" and (**b**) individuals with mailing addresses located within the confines of the Seventh Circuit who, within one year of the filing of this First Amended Complaint were mailed collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" or "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" where the enclosed collection letters did not convey any truly "time sensitive" or "important document".

88. Both proposed classes are limited to individuals who took out credit card debts in relation to Menards and Walmart Rewards branded credit cards issued by Capital One, N.A.

89. Accordingly, consistent with FRCP 23(b)(3)(D), the proposed class action claims are narrowly tailored to focus on the terms of the cardholder agreements with the original creditor, Capital One N.A. *See, e.g., Pierre v. Midland Credit Mgmt.*, 2017 U.S. Dist. LEXIS 61107, *12, *24-*26 (N.D. Ill. April 21, 2017)("Midland argues that Pierre's proposed class is not identifiable because individualized inquiries are necessary to determine whether members are subject to arbitration clauses and class action waivers vis-à-vis agreements with their original creditors. However, identifiability

concerns whether each potential class member falls within the class based on objective criteria. Midland's invocation of the need for individualized inquiries is more properly directed to predominance and, as such, the Court engages it in the Rule 23(b)(3) portion of this opinion. **\*** Midland argues that mandatory arbitration provisions and class action waivers in many putative class members' original credit agreements necessitate individualized inquiries to determine whether each class member has an actionable claim. Midland points to sample credit agreements from, for example, Chase Bank and Citi Bank that contain such provisions, and avers that as many as one-third of potential class members are subject to similar legal bars to recovery in this action. Alternatively, Midland clothes its prior statute-of-limitations and typicality arguments in predominance garb, suggesting that the potential for plaintiffs with time-barred or actual damages claims leads to predominance of individualized issues. Leaving aside the threshold authentication issue of whether the Court can even take judicial notice of the attached sample credit agreements, the Court finds them irrelevant to predominance here. Midland Funding LLC, not Midland, is the assignee and owner of putative class members' underlying debt obligations. Thus, the benefits of any class action waiver or arbitration provision contained in underlying credit agreements do not redound to Midland. In this action, Pierre is suing Midland for violations of the FDCPA arising out of its conduct as a debt servicer; it is suing neither Midland Funding LLC nor any entity that was a party to the credit agreements containing the alleged class action waivers or mandatory arbitration provisions. Contrary to Midland's wrongheaded proclamation, the potential existence of such provisions in class members' underlying credit agreements does not necessitate individualized inquiries to determine eligibility to participate in this suit. Rather, "these inquiries are unnecessary to resolution of Plaintiff's claim.") (internal citations omitted).

20

90.     To the extent possible, the time-period of the class shall extend back more than one year from the filing of this First Amended Complaint to encompass the tolling of the applicable statute of limitations as a result of the putative class action complaint, *Neal Preston v. Midland Credit Mgmt, Inc.*, 18-cv-01532 (filed on March 1, 2018). Plaintiff reserves the right to expand the scope of the above class definitions.

### VI.     Causes of Action

### Count I – Violations of Section 1692e of the FDCPA

91.     Plaintiff ADRIAN COSS, individually and on behalf of a class of similarly situated individuals, repeats and alleges paragraphs 1 through 90 as though fully set forth herein.

92.     The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt.

93.     Defendant violated §1692e when it used deceptive means to collect and/or attempt to collect the subject debt. Specifically, it was deceptive for Defendant to implicitly represent that it could include the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" printed on an envelope containing a collection letter that was not inherently time-sensitive in nature.

94.     The FDCPA specifically prohibits debt collectors from including this type of language on its envelopes, thus Defendant acted deceptively by including it in clear violation of the FDCPA.

95.     As set forth above, Defendant's practice of mailing collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" constituted an false, deceptive, or misleading representation or means in connection with the collection of the subject debt

- where the discounted payment options set forth on the enclosed collection letters were not inherently time-sensitive in nature in light of similar discounted payment offers that Defendant would later mail to Plaintiff.

96.    For the above reasons, Defendant's conduct in attempting to collect the Subject Debt by mailing discounted payment letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" violated § 1692e.

WHEREFORE, Plaintiff ADRIAN COSS respectfully requests that this Honorable Court enter judgment in his favor as follows:

   a.  Declaring that the practices complained of herein are unlawful;

   b.  Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

   c.  Awarding class members statutory damages as provided under 15 U.S.C. §1692k(a)(2)(B);

   d.  Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

   e.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

   f.  Enjoining Defendant from further contacting Plaintiff; and

   g.  Awarding any other relief as this Honorable Court deems just and appropriate.

**<u>Count II – Violations of Section 1692e(2) of the FDCPA</u>**

97.    Plaintiff ADRIAN COSS, individually and on behalf of a class of similarly situated individuals, repeats and alleges paragraphs 1 through 90 as though fully set forth herein.

98.    Section 1692e(2), prohibits a debt collector from engaging in any "false representation of – (A) the character, amount or legal status of any debt[.]"

99. Specifically, Defendant engaged in a "false representation" when it included the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" on envelopes that were used to mail collection letters that was not inherently time-sensitive in nature.

100. As set forth above, Defendant's practice of mailing collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" constituted a "false representation" of the character, amount and/or legal status of the Subject Debt - where the discounted payment options set forth on the enclosed collection letters were not inherently time-sensitive in nature in light of similar discounted payment offers that Defendant would later mail to Plaintiff.

101. For the above reasons, Defendant's conduct in attempting to collect the Subject Debt by mailing discounted payment letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" violated § 1692e(2)(A).

WHEREFORE, Plaintiff ADRIAN COSS respectfully requests that this Honorable Court enter judgment in his favor as follows:

      a. Declaring that the practices complained of herein are unlawful;

      b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

      c. Awarding class members statutory damages as provided under 15 U.S.C. §1692k(a)(2)(B);

      d. Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

      e. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

      f. Enjoining Defendant from further contacting Plaintiff; and

g. Awarding any other relief as this Honorable Court deems just and appropriate.

**<u>Count III – Violations of Section 1692e(10) of the FDCPA</u>**

102. Plaintiff ADRIAN COSS, individually and on behalf of a class of similarly situated individuals, repeats and alleges paragraphs 1 through 90 as though fully set forth herein.

103. Section §1692e(10) prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt.

104. Specifically, Defendant engaged in false, deceptive, or misleading representation or means in connection with the collection of the S Debt when it included the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" on envelopes that were used to mail collection letters that was not inherently time-sensitive in nature.

105. As set forth above, Defendant's practice of mailing collection letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" constituted a false, deceptive, or misleading representation or means in connection with the collection of the Subject Debt - where the discounted payment options set forth on the enclosed collection letters were not inherently time-sensitive in nature in light of similar discounted payment offers that Defendant would later mail to Plaintiff.

106. For the above reasons, Defendant's conduct in attempting to collect the Subject Debt by mailing discounted payment letters inside of envelopes marked with the words "**TIME SENSITIVE DOCUMENT**" and "IMPORTANT DOCUMENT ENCLOSED ATTENTION REQUESTED" violated § 1692e(10).

WHEREFORE, Plaintiff ADRIAN COSS respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful;

b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c. Awarding class members statutory damages as provided under 15 U.S.C. §1692k(a)(2)(B);

d. Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

e. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

f. Enjoining Defendant from further contacting Plaintiff; and

g. Awarding any other relief as this Honorable Court deems just and appropriate.

## **Count IV – Violations of Section 1692f(8) of the FDCPA**

107. Plaintiff ADRIAN COSS, individually and on behalf of a class of similarly situated individuals, repeats and alleges paragraphs 1 through 90 as though fully set forth herein:

108. Defendant violated § 1692f(8) when it attempted to collect the Subject Debt when it mailed collection letters to Plaintiff where the envelopes were marked with the words "**TIME SENSITIVE DOCUMENT"**.

109. Defendant violated § 1692f(8) when it attempted to collect the Subject Debt when it mailed collection letters to Plaintiff where the envelopes were marked with the words "IMPORTANT DOCUMENT ENCLOSED, ATTENTION REQUESTED".

WHEREFORE, Plaintiff ADRIAN COSS respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful;

    b.   Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

    c.   Awarding class members statutory damages as provided under 15 U.S.C. §1692k(a)(2)(B);

    d.   Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

    e.   Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

    f.   Enjoining Defendant from further contacting Plaintiff; and

    g.   Awarding any other relief as this Honorable Court deems just and appropriate.

### Count V – Violations of Section 1692f(8) of the FDCPA

110.   Plaintiff ADRIAN COSS, individually, repeats and alleges paragraphs 1 through 90 as though fully set forth herein:

111.   As a result of receiving the above unlawful communications from Defendant, Plaintiff retained the undersigned counsel to bring legal action against Defendant.

112.   The undersigned wrote to Defendant and informed Defendant that the undersigned was retained to represent Plaintiff and to cease all communication with Plaintiff.

113.   Despite instructing Defendant in this manner, Defendant sent collection letters to Plaintiff after Defendant was put on notice that the undersigned represented Plaintiff.

114.   As a result of the above conduct, Plaintiff agreed to pay counsel to protect him against any further communications.

115.   Defendant's conduct violated Section 1692c(a)(2) which provides that "a debt collector may not communicate with a consumer in connection with the collection

of any debt — if the debt collector knows the consumer is represented by an attorney with respect to such debt".

WHEREFORE, Plaintiff ADRIAN COSS respectfully requests that this Honorable Court enter judgment in his favor as follows:

      a. Declaring that the practices complained of herein are unlawful;

      b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

      c. Awarding Plaintiff actual damages as provided by 15 U.S.C. §1692k(a)(1));

      d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

      e. Enjoining Defendant from further contacting Plaintiff; and

      f. Awarding any other relief as this Honorable Court deems just and appropriate.

**_Plaintiff demands a jury trial._**

Dated: February 10, 2021                        Respectfully submitted,

/_s/ James C. Vlahakis_
James C. Vlahakis, Esq.
Sulaiman Law Group, Ltd.
2500 S. Highland Ave.,
Suite 200
Lombard, IL 60148
Phone: (630) 575-8181
jvlahakis@sulaimanlaw.com

_Attorney for Plaintiff and the proposed class members_

27